# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Martin C. Ashman | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 03 C 1367 | **DATE** | 9/2/2004 |
| **CASE TITLE** | Terry Johnson vs. Anthony J. Principi, et al. | | |

**MOTION:**

[In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due _____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).

(10) ■ [Other docket entry] Enter memorandum opinion and order. Defendants American Federation of Government Employees, AFL-CIO; American Federation of Government Employees, AFL-CIO, Local No. 2107 and Lawrence Jenkins' joint motion to dismiss the second amended complaint [55-1] is granted with prejudice.

(11) ■ [For further detail see order attached to the original minute order.]

| | | | | | |
|---|---|---|---|---|---|
| | No notices required, advised in open court. | | | 3 | **Document Number** |
| | No notices required. | | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | | | |
| | Notified counsel by telephone. | | | date docketed | |
| | Docketing to mail notices. | | | | 63 |
| | Mail AO 450 form. | | | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | | 9/2/2004 | |
| | | | | date mailed notice | |
| IS | courtroom deputy's initials | | | IS | |
| | | Date/time received in central Clerk's Office | | mailing deputy initials | |

## IN THE UNITED STATES DISTRICT COURT
## FOR NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

**TERRY JOHNSON,** )
)
              Plaintiff, )    Case No. 03 C 1367
)
        v. )    Magistrate Judge
)       Martin C. Ashman
**ANTHONY J. PRINCIPI**, Secretary of )
Veterans Affairs; **AMERICAN** )
**FEDERATION OF GOVERNMENT** )
**EMPLOYEES, AFL-CIO; AMERICAN** )
**FEDERATION OF GOVERNMENT** )
**EMPLOYEES, AFL-CIO, LOCAL** )
**NO. 2107**; and **LAWRENCE JENKINS,** )
)
           Defendants. )



## MEMORANDUM OPINION AND ORDER

      Plaintiff Terry Johnson filed her Second Amended Complaint against her former

employer, the Veterans Affairs Medical Center ("VAMC"), alleging she had been subject to

denigrating comments and abuse by its management and her fellow employees because of her

sex, race, national origin, disabling condition, or in retaliation for a previous formal Department

of Veteran's Affairs ("VA") Equal Employment Opportunity ("EEO") complaint she had filed

against the VAMC. Plaintiff's complaint also included allegations against her local union, Local

2107, her national union, American Federation of Government Employees ("AFGE")

(collectively "the Union Defendants"), and Lawrence Jenkins, Chief Steward of Local 2107,

complaining that these three defendants mistreated her by failing to assist her in filing grievances

against the VAMC and denying her requests to be appointed to a stewardship position in the

local union. Plaintiff asserts their actions were in violation of Title VII of the Civil Rights Act,

42 U.S.C. § 2000e *et seq.* (Count I), 42 U.S.C. § 1981 (Count II), and the Americans With Disability Act of 1990, 42 U.S.C. § 12101 *et seq.* ("ADA") (Count III). The Union Defendants and Jenkins have now filed a motion to dismiss.[1]

For the following reasons, the Court grants the motion to dismiss in its entirety.

## I. **Background**

### A. **Procedural Background**

On June 12, 1996, Plaintiff filed a formal EEO complaint against the VAMC, her employer at the time, with the VA, claiming she was a victim of sex and race discrimination. This complaint was resolved through a settlement agreement between Plaintiff and the VAMC. Following this agreement, Plaintiff alleged she was subject to denigrating comments and abuse by the VAMC's employees and management. Thereafter, on February 24, 2003, Plaintiff filed the initial complaint in this Court, *pro se*, for this action against Secretary of Veterans Affairs Anthony J. Principi[2] and the President of AFGE, Bobby Harnage, alleging claims of discrimination and related misconduct. In August 2003, the Court granted Plaintiff leave to file an amended complaint. The Court subsequently appointed Plaintiff counsel. On November 21, 2003, Plaintiff sought leave to amend the amended complaint to substitute defendants. With the Court's permission, Plaintiff filed her Second Amended Complaint on February 23, 2004,

---

[1] The parties have consented to have this Court conduct any and all proceedings in this case, including the entry of final judgment. *See* 28 U.S.C. § 636(c); Local R. 73.1(a).

[2] Defendant Principi is the Secretary of Veterans Affairs and is charged with the administration and operation of the VA, including the operation of the VAMC.

replacing Bobby Harnage with current the Union Defendants–AFGE, Local Union 2107, and

Lawrence Jenkins. The Union Defendants and Jenkins now file their Joint Motion to Dismiss

the Second Amended Complaint.


### B.     Factual Background

When considering a motion to dismiss, the Court must consider the allegations in the

complaint to be true and view them, along with the reasonable inferences that can be drawn from

them, in the light most favorable to the plaintiff. *See Massey v. Helman*, 196 F.3d 727, 732 (7th

Cir. 1999).

Plaintiff is a disabled African-American of Cherokee ancestry, and also a veteran of the

United States Army. She was born with male genitalia but identifies herself as female. For the

time period relevant to this case, Plaintiff's dress and appearance at work, as well as in the rest of

her life, has been feminine.

Plaintiff was employed at the VAMC from 1993 until August 2001, at which time her

status changed to disability retirement. When she left the VAMC in August 2001, she was

employed as a Pharmacy Technician. For the past several years, Plaintiff has also been a

member of Local 2107, a local union representing federal government employees. Local 2107

functions as a labor organization affiliated with AFGE, a national union functioning across the

United States representing federal government employees.

Plaintiff states she was subject to denigrating comments and abuse at the VAMC by both

management and fellow employees. In addition, she alleges that the VAMC rejected her

applications for promotion or reassignment, because of her sex, race, national origin and

disabled condition, or in retaliation for her 1996 EEO complaint, despite favorable performance evaluations and acknowledgment by the VAMC that Plaintiff was qualified for those positions. In Fall of 2003, Plaintiff filed a formal VA EEO complaint against the VAMC. The VA issued a Final Agency Decision against Plaintiff's complaint on January 14, 2003.

Plaintiff alleges she informed Local 2107 and Lawrence Jenkins, an employee of the VAMC and Chief Steward of Local 2107, about the discrimination and misconduct she experienced at the VAMC. However, union personnel failed to address or file grievances relating to her mistreatment at the VAMC. Jenkins and other leaders of Local 2107 have denied her requests to be appointed to a stewardship position, and prevented her from being on the ballot for the positions of Chief Steward and Vice President of the local union. Local 2107 also deleted Plaintiff's name from the mailing list and from the AFGE national roll, and as a result, prevented her from receiving notice of the September 2002 Chief Stewardship election in sufficient time to submit her name for nomination by the June 24, 2002 deadline date. On June 4, 2003, Jenkins referred to her as "Thing" before members of Local 2107 and employees of the VAMC. Plaintiff contends that these actions were taken by union personnel on account of her race, national origin, disability and sexual orientation. Plaintiff complained to the AFGE about the misconduct of Jenkins and Local 2107, and the AFGE did not take corrective action. Count I of her complaint alleges violations of Title VII, Count II alleges violations of Section 1981, and Count III alleges violations of the ADA.[3]

---

[3] Plaintiff also filed a complaint against the VAMC under Section 794 of the Rehabilitation Act of 1973, 29 U.S.C. § 701 *et seq.*, which makes it unlawful for any federal agency, or any program or activity receiving federal assistance, to discriminate against an
(continued...)

## II. **Discussion**

The Union Defendants and Jenkins do not identify under which rule their motion to dismiss is brought. Presumably, with respect to Counts I and III, it is brought under Rule 12(b)(6), for failure to state a claim upon which relief can be granted. The motion to dismiss Count II appears to be brought under Rule 12(b)(1), for lack of subject matter jurisdiction, and also under 12(b)(6) with respect to Jenkins.

In considering a motion to dismiss under Rule 12(b)(6), a court does not decide the merits of the case, but rather tests the sufficiency of the complaint. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990). A court must accept as true all the plaintiff's well-pleaded factual allegations and the inferences reasonably drawn from them. *Apostol v. Landau*, 957 F.2d 339, 343 (7th Cir. 1992). Dismissal will be granted only if the plaintiff has failed to allege any set of facts upon which relief may be granted. *Id.*

A 12(b)(1) motion provides for dismissal of a complaint where a court lacks subject matter jurisdiction. As under Rule 12(b)(6), the same presumption for well-pleaded factual allegations applies. *United Transp. Union v. Gateway W. Ry. Co.*, 78 F.3d 1208, 1210 (7th Cir. 1996). However, the plaintiff bears the burden of establishing that the jurisdictional requirements have been met. *United Phosphorus, Ltd. v. Angus Chem. Co.*, 322 F.3d 942, 946 (7th Cir. 2003).

---

[3](...continued)
otherwise qualified individual with a disability. According to the allegations, the Union Defendants do not qualify as covered entities under the Act. *See* 29 U.S.C. § 794(b). Plaintiff has not claimed she is able to sue the Union Defendants or Jenkins under the Rehabilitation Act.

## A.    Counts I and Count III against Jenkins and the Union
##         Defendants must be dismissed.

First, Plaintiff concedes that Seventh Circuit authority supports the absence of individual

liability under Title VII and the ADA. *See Sattar v. Motorola, Inc.*, 138 F.3d 1164, 1168 (7th

Cir. 1998); *EEOC v. AIC Sec. Investigations, Ltd.*, 55 F.3d 1276, 1279-82 (7th Cir. 1995).

Therefore, Counts I and III are dismissed against Jenkins.

Next, the Union Defendants argue that Plaintiff does not meet the requirement of having

exhausted anti-discrimination administrative procedures against them, and therefore cannot bring

suit in this Court against the Union Defendants. Plaintiff counters that equity requires the Court

to consider Plaintiff's Title VII and ADA claims notwithstanding any failure to exhaust

administrative remedies.

In order to assert violations of Title I of the ADA and Title VII of the Civil Rights Act,

plaintiffs must exhaust the administrative remedies available to them before commencing a

lawsuit. *Ester v. Principi*, 250 F.3d 1068, 1071 (7th Cir. 2001); *Basith v. Cook County*, 241 F.3d

919, 931 (7th Cir. 2001). Equal Employment Opportunity Commission ("EEOC") regulations

allow an individual claiming to have been a victim of a labor organization's unlawful

employment practice within the meaning of Title VII or the ADA to file a formal charge with the

Commission. 29 C.F.R. § 1601.7. *See also* 42 U.S.C. § 12111(2); 42 U.S.C. § 2000e(d). The

requirement that a complainant file an EEOC charge of discrimination before commencing a

lawsuit in federal court serves two purposes. First, it provides notice of the complaint to the

alleged violator of Title VII or the ADA. *Zipes v. Trans World Airlines, Inc.*, 455 U.S. 385, 398

(1982). Second, it gives the EEOC an opportunity for conciliation, ultimately encouraging

voluntary compliance with these federal mandates. *Schnellbaecher v. Baskin Clothing Co.*, 887 F.2d 124, 126 (7th Cir. 1989).

Exhaustion of this administrative remedy does not constitute an absolute jurisdictional prerequisite to bring suit in the district court, but serves as a precondition subject to waiver, estoppel and equitable tolling. *Gibson v. West*, 201 F.3d 990, 993-94 (7th Cir. 2000); *see also Zipes*, 455 U.S. at 398 (compliance with the requirement to timely-file EEOC complaint not a jurisdictional absolute, but a requirement subject to waiver as well as tolling when equity so requires). In *Olsen v. Marshall & Ilsley Corp.*, 267 F.3d 597, 604 (7th Cir. 2001), the Seventh Circuit recognized that an exception to the general rule that a party named in a Title VII suit must have been named in a previous EEOC charge exists when the unnamed party had adequate notice of the charge, under circumstances where it would have had an opportunity to participate in conciliation proceedings. However, in *Olsen*, the Seventh Circuit found that the exception did not apply because the claimant failed to name the parent organization in its EEOC charge against its subsidiary. *Id.* Reasoning that there was no showing that the parent had any notice of the claim against it, as opposed to the claim against its subsidiary, and did not have an opportunity to conciliate on its own behalf, the Court dismissed the case against the parent organization. *Id.*

As in *Olsen*, this Court finds that equity does not require this Court to overlook Plaintiff's failure to exhaust EEOC administrative procedures and consider Plaintiff's Title VII or ADA claims. Plaintiff does not dispute the fact that she did not file a charge with the EEOC. Rather, she contends she attempted to address the Union Defendants' misconduct through her initiation of formal VA EEO procedures against the VAMC in 2001, and therefore should be allowed to file suit in this Court. However, no union entity was a party in the VA's processing of the case

because it was solely filed against Plaintiff's employer, the VAMC. Even if it is true, as Plaintiff contends but the Union Defendants vigorously deny, that the Union Defendants had notice of the discrimination Plaintiff alleged in her complaint against her employer through the VA EEO proceeding, there is no indication that the Union Defendants had notice of the charges against themselves by virtue of any allegations made by Plaintiff during that process, nor did they have an opportunity to conciliate on their own behalf. *See Schnellbaecher*, 887 F.2d at 127 (district court properly dismissed suit against a clothing store's parent organization that had notice of EEOC charges against the clothing store but not of the charges against itself).

Plaintiff also argues equity should compel the Court to allow her to proceed with her suit against the Union Defendants, notwithstanding her failure to exhaust administrative remedies, because she was not advised by either the VA or the Union Defendants that she needed to initiate EEOC proceedings in order to preserve her claims under Title VII and the ADA. Plaintiff cites no authority supporting her proposition that the Union Defendants had a duty to inform her of her of these requirements. Perfunctory and underdeveloped arguments that are unsupported by pertinent authority are waived. *United States v. Berkowitz*, 927 F.2d 1376, 1384 (7th Cir. 1991).

We note that ignorance of the law generally does not excuse a failure to learn of one's rights in filing a timely complaint with the EEOC. Additionally, Plaintiff does not allege that the Union Defendants actively mislead her, or that she was not otherwise aware of her rights. *See Roberts v. Union Pac. R.R.*, 16 Fed. Appx. 730, 734-35 (9th Cir. 2001) (unpublished); *Kramer v. United Fed'n of Teachers*, 02 C 8901, 2003 WL 21180413, at *4 (S.D.N.Y. May 20, 2003); *cf. Burkley v. Martin's Super Markets, Inc.*, 741 F. Supp. 161, 164 (N.D. Ind. 1990) (ignorance of the law not an excuse for failing to file age discrimination complaint with the EEOC in absence

of evidence that employer failed to post EEOC filing information); *cf. Jenkins v. Gen. Motors Corp.*, 364 F. Supp. 302, 309 (Del. 1973) (union member's ignorance not an adequate excuse to allow him to bypass requirement in exhausting internal union remedies before initiating suit in court). Under the facts presented to the Court, Plaintiff may not assert reliance on the Union Defendants for information as to the nature of her remedies as an answer to the Union Defendant's motion to dismiss for failure to exhaust the EEOC administrative processes. *See cf. Brookins v. Chrysler Corp.*, 381 F. Supp. 563, 567 (E.D. Mich. 1974) (union member not justified in remaining ignorant of provisions governing union grievance process, nor in relying on statement by an officer that there was nothing he could do). Therefore, the Court grants the Union Defendants' motion to dismiss Counts I and III of the Second Amended Complaint.

**B.     The CSRA precludes suits over the representational affairs of non-postal federal employee unions, and the Court must therefore dismiss all complaints regarding violations of Section 1981 (Count II) by the Union Defendants in their representation of Plaintiff.**

The Union Defendants argue that the Court lacks jurisdiction over Section 1981[4] allegations in Plaintiff's complaint because the Civil Service Reform Act ("CSRA") of 1978, 5 U.S.C. § 7101 *et seq.*, provides the exclusive scheme for redressing claims of discrimination by

---

[4] "All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other." 42 U.S.C. § 1981(a). "Make and enforce contracts" is defined as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." 42 U.S.C. § 1981(b).

non-postal federal employee unions in representational affairs. Plaintiff counters that because the CSRA and Section 1981 are not irreconcilable, she is free to choose to pursue her complaint through either the federal court or through processes specified by the CSRA.

The CSRA "elaborated a comprehensive framework for handling the complaints of civil service employees faced with adverse personnel decisions." *Ayrault v. Pena*, 60 F.3d 346, 347 (7th Cir. 1995). The CSRA was designed to replace the haphazard arrangements that had built up over almost a century with one integrated system for administrative and judicial review of adverse federal employee personnel actions. *United States v. Fausto*, 484 U.S. 439, 444 (1988). In 1988, the Supreme Court held that pre-CSRA legal remedies available to federal employees were no longer available for matters now within the CSRA's scope. *Id.* at 448. The Supreme Court reasoned that the availability of alternative remedies to federal employee's complaints would undermine the CSRA because of the statute's great detail in its protections and remedies, including the options for administrative and judicial review. *Id.* Lower courts, including the Seventh Circuit, have interpreted this holding to mean that the CSRA preempted the field by superseding preexisting remedies for all federal employees. *Ayrault*, 60 F.3d at 348.

Title VII of the CSRA recognizes a duty of fair representation on a union representing non-postal federal employees. *Karahalios v. Nat'l Fed'n of Fed. Employees, Local 1263*, 489 U.S. 527, 531 (1989). The specific duty, found in 5 U.S.C. § 7114(a)(1), provides that a labor organization must represent the "interests of all employees in the unit . . . without discrimination and without regard to labor organization membership." Breach of this duty of fair representation constitutes an unfair labor practice. 5 U.S.C. § 7116(b)(4); *Karahalios*, 489 U.S. at 532. Thus, an unfair labor practice for a labor organization includes "discriminat[ing] against an employee

with regard to the terms or conditions of membership in the labor organization on the basis of race, color, creed, national origin, sex, age, preferential or nonpreferential civil service status, political affiliation, marital status, or handicapping condition," 5 U.S.C. § 7116(b)(4), and an aggrieved employee may file a complaint with the Federal Labor Relations Authority ("FLRA"), which is charged to carry out the purposes of Title VII of the CSRA and order remedial action when appropriate, *Karahalios*, 489 U.S. at 532.

Plaintiff alleges Section 1981 violations against the Union Defendants in their failure to file grievances against the VAMC on her behalf, despite her requests for such assistance. She contends the Union Defendants violated her Section 1981 rights when they failed to adequately represent her on account of her race. Under the CSRA, fair representation clearly includes a duty to represent "without discrimination," and it is clear that Plaintiff's allegations of discrimination fall within the purview of the CSRA definition of an "unfair labor practice." *See* 5 U.S.C. §§ 7114(a)(1), 7116(b)(4); *Karahalios*, 489 U.S. at 532; *Johnson v. Principi*, CV-00-1873, 2001 WL 1511294, at *1 (M.D. Pa. Sept. 17, 2001). Because the Supreme Court has made it clear that Congress vested exclusive enforcement authority over a union's duty of fair representation in the FLRA, it necessarily follows that there can be no parallel private cause of action, and therefore this Court lacks jurisdiction over all of Plaintiff's unfair representation claims against the Union Defendants.[5] *See Karahalios*, 489 U.S. at 532.

---

[5] Title VII of the CSRA provides recourse to the courts in only three instances: with specified exceptions, persons aggrieved by a final FLRA order may seek review in the appropriate appellate court; the FLRA may seek judicial enforcement of its orders, and; temporary injunctive relief is available to the FLRA to assist it in the discharge of its duties. 5 U.S.C. § 7123(a)-(b), (d).

Plaintiff nevertheless urges this Court to find that Congress intended the CSRA to supplement, rather than supersede preexisting remedies, like Section 1981, available to federal employees experiencing race discrimination. Under this argument, a federal employee who desires to pursue an unfair representation claim against a union could simultaneously pursue relief through both the FLRA and the federal court. She supports this argument with a canon of statutory construction that repeals by implication are not favored, and in the absence of some affirmative showing of an intention to repeal, the only permissible justification for a repeal by implication is when the earlier and later statutes are irreconcilable. *See Morton v. Mancari*, 417 U.S. 535, 549 (1974) (citations omitted); *see also Randall v. Loftsgaarden*, 478 U.S. 647, 661 (1986) (citations omitted). Plaintiff follows this reasoning with the contention that because the CSRA is not "irreconcilable" with Section 1981, it necessarily follows that the Court must not bar Plaintiff direct access to the Court.

There are two well-settled categories of repeals by implication -- (1) where provisions in the two acts are in irreconcilable conflict, the later act, to the extent of the conflict, constitutes an implied repeal of the earlier one; or (2) if the later act covers the whole subject of the earlier one and is clearly intended as a substitute, it will operate similarly as a repeal of the earlier act. *Randall*, 478 U.S. at 661 (citations omitted). Plaintiff argues that because Section 1981 and the CSRA are not "irreconcilable," the Court should restrain from finding a repeal by implication. She urges the Court to find that the complementary nature of these statutes constitute a general intent by the legislature to allow parallel or overlapping remedies against discrimination. However, Plaintiff's argument does not address the application in the instant case of the second avenue of finding a repeal by implication where Congress intends a "precisely drawn, detailed

statute" to pre-empt more general remedies. *Brown v. Gen. Servs. Admin.*, 425 U.S. 820, 834 (1976). Under the more general Section 1981, claims need not be brought through any administrative review, nor is there any opportunity for conciliation. *Patterson v. McLean Credit Union*, 491 U.S. 164, 181 (1989), *overruled by statute on other grounds*. In contrast, allegations made under the CSRA scheme, against a federal employee union's representational conduct, must be dealt with through FLRA investigation and adjudication. 5 U.S.C. § 7118(a)(1)-(3), (6)-(8).

The broad language of Section 1981 is not conclusive on the issue before us. *Cf. Preiser v. Rodriguez*, 411 U.S. 475, 489 (1973). The court should be reluctant to read an earlier statute broadly where the result is to circumvent the detailed remedial scheme constructed in a later statute. *Patterson*, 491 U.S. at 181. The CSRA's integrated scheme of administrative and judicial review "would be driven out of currency were immediate access to the courts under other, less demanding statutes permissible." *Cf. Brown*, 425 U.S. at 833. It would frustrate the explicit congressional intent for the FLRA to be the exclusive enforcement authority over a union's duty of fair representation if we held that Plaintiff could bring this claim directly into federal court by bringing suit under Section 1981, simply by putting a different label on the pleadings. *See cf. Preiser*, 411 U.S. at 489-91; *Abbott v. United States*, 144 F.3d 1, 4 (1st Cir. 1998) (action against union properly dismissed because claim was viewed as a duty of fair representation claim masquerading in different garb); *Montplaisir v. Leighton*, 875 F.2d 1, 4 (1st Cir. 1989).

A Pennsylvania District Court accordingly has found that a Section 1981 claim cannot be pursued against a non-postal federal employee union and its president because the more detailed

CSRA regulatory scheme provided for claims of discrimination in representation. *Johnson*, 2001 WL 1511294, at *1. Likewise, this Court finds that within the context of complaints filed against non-postal federal employee unions and their members, allegations of discrimination in representation must be pursued according to CSRA standards, rather than under the more general Section 1981 statute.

**C.    The CSRA precludes suits over the internal electoral affairs of non-postal federal employee unions, and the Court must therefore dismiss all complaints regarding violations of Section 1981 (Count II) by the Union Defendants over their internal affairs.**

In her Second Amended Complaint, Plaintiff states that Local 2107 and other leaders of the union discriminated against her when they denied her requests to be appointed to a stewardship position and prevented her from appearing on the election ballot for the positions of Chief Steward and Vice President of Local 2107. The Union Defendants argue that even if this is true, there is no private cause of action available to individuals wishing to raise these issues against labor organizations, like Local 2107, which are subject to the CSRA, and therefore the Court must find that it lacks jurisdiction over Plaintiff's complaint.

"Labor organizations"[6] within the CSRA's scope are subject to regulation of their internal affairs pursuant to 5 U.S.C. § 7120 ("Section 7120").[7] Local 2107 is a "labor organization" subject to CSRA regulations. Section 7120 provides that organizations seeking to represent federal employees must comply with "trusteeship and election standards" that "conform generally to the principles applied to labor organizations in the private sector," that are regulated by the Labor-Management Reporting and Disclosure Act ("LMRDA").[8] 5 U.S.C. § 7120(c) & (d); *see also Reed v. Sturdivant*, 176 F.3d 1051, 1054 (8th Cir. 1999). While this means that the principles governing labor organizations under both the CSRA and LMRDA are similar, the respective remedial regimes under the different Acts are very different. *Reed*, 176 F.3d at 1054. Under the LMRDA, a complaining member may bring a private action against her union. 29 U.S.C. § 464(a). In contrast, the CSRA does not allow a complainant to challenge an alleged infraction directly in federal court, requiring that complaints of "violations of this section . . . be filed with the Assistant Secretary." 5 U.S.C. § 7120(d); *see also Reed*, 176 F.3d at 1054; *Karahalios*, 189 U.S. at 532.

---

[6] "Labor organization" means an organization composed in whole or in part of employees, in which employees participate and pay dues, and which has as a purpose the dealing with an agency concerning grievances and conditions of employment, but does not include -- **(A)** an organization which, by its constitution, bylaws, tacit agreement among its members, or otherwise, denies membership because of race, color, creed, national origin, sex, age, preferential or nonpreferential civil service status, political affiliation, marital status, or handicapping condition . . . . 5 U.S.C. § 7103(a)(4).

[7] The Assistant Secretary of Labor is responsible for issuing regulations under Section 7120. 5 U.S.C. § 7120(d). These regulations can be found at 29 C.F.R. § 458 *et seq.*

[8] 29 U.S.C. § 401 *et seq.*

Local 2107 does not provide any representation to private sector employees and therefore is not an LMRDA "labor organization."[9] At the same time, because Local 2107 represents non-postal federal employees, it comes within the CSRA's definition of a "labor organization." Because Plaintiff's allegations against Local 2107 regard complaints of discrimination in the local union's election process, an issue covered by Section 7120, the Court finds that Plaintiff may not bring suit in this court, but rather must file her grievance with the Assistant Secretary of Labor. *See* 5 U.S.C. § 7120(c)-(d). Therefore, for all the reasons given above, Count II must be dismissed against the Union Defendants.

### D. The Section 1981 (Count II) discrimination claims against Jenkins must be dismissed.

Jenkins argues that Plaintiff's Section 1981 claim is preempted by the CSRA. Plaintiff responds that even if it is true that the CSRA preempts Section 1981 as to "labor organizations," it does not preclude Plaintiff from suing Jenkins in an individual capacity because he is not a labor organization. Plaintiff asserts that individual liability exists under Section 1981.

Section 1981, which guarantees equal rights to make and enforce contracts, was not intended by Congress to become a general prohibition against race discrimination. *Baltimore-Clark v. Kinko's Inc.*, 270 F. Supp. 2d 695, 700 (D. Md. 2003). However, in 1991,

---

[9] In general, the LMRDA applies to "labor organizations" that deal with "employers." *See* 29 U.S.C. § 402(i). The United States is excluded from the LMRDA definition of "employer." 29 U.S.C. § 402(e). Local 2107, therefore is not a "labor organization" under the LMRDA because it represents only federal government employees. *See also Reed*, 176 F.3d at 1054. In Plaintiff's Second Amended Complaint, AFGE is identified as a union representing federal government employees. There are no allegations that this union represents individuals from the private sector.

Congress amended Section 1981 to include language defining to "make and enforce contracts" as the "making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms and conditions of the contractual relationship." 42 U.S.C. § 1981(b). In order to establish a prima facie case of discrimination under Section 1981, a plaintiff must show (1) she is a member of a racial minority; (2) the defendant had an intent to discriminate on the basis of race; (3) the discrimination interfered with a protected activity as recognized under Section 1981 (i.e., make and enforce contracts, sue and be sued, or give evidence). *Morris v. Office Max, Inc.*, 89 F.3d 411, 413 (7th Cir. 1996).

Although individual liability under Section 1981 generally may be found if a plaintiff proves the prima facie case, and shows that the individual defendant himself has participated in the alleged discrimination against the claimant, the Court must dismiss Count II as to Jenkins because Plaintiff has failed to plead a prima facie case of discrimination under Section 1981. *See Behnia v. Shapiro*, 961 F. Supp. 1234, 1237 (N.D. Ill. 1997) (individual liability can be found only where the individual himself has participated in the alleged discrimination against the plaintiff). Plaintiff has failed to plead facts indicating that Jenkins individually interfered with her right to make and enforce a contract, or with any other protected activity under Section 1981.

In any event, Plaintiff has not alleged any specific acts by Jenkins that support her allegations that she was discriminated against because of her race. *See id.* (plaintiff must sufficiently allege that the defendant himself possessed an "intent to discriminate on the basis of race") (citation omitted). Plaintiff states that Jenkins refused to file grievances against the VAMC on her behalf, despite her requests for such assistance, and prevented her from appearing on the election ballot for the positions of Chief Steward and Vice President of Local 2107.

Neither of these two acts or omissions, standing alone, show the required intent. She contends that Jenkins' reference to her as a "Thing" in front of fellow members of Local 2107 and employees of the VAMC demonstrated that racial animus was the motivating factor of the offense. However, allegations of an occasional or sporadic use of racial slurs or epithets by a defendant will not in and of themselves defeat a motion to dismiss a Section 1981 claim. *Sampson v. Vill. Disc. Outlet, Inc.*, 832 F. Supp. 1163, 1167 (N.D. Ill. 1993). The single occasion cited by Plaintiff where Jenkins called her a "Thing" is not enough to support her Section 1981 claim, especially given that the term, although derogatory, is not clearly or necessarily directed at Plaintiff's race.

Additionally, we do note that allegations of Section 1981 liability against Jenkins in his official capacity as union steward would be preempted by the CSRA. *Cf. Turner v. Ceruti*, No. 03-55653, 2004 WL 1435141, at *1 (9th Cir. June 24, 2004) (federal employee's state law claims against union officers were preempted by the CSRA) (unpublished).

Therefore, the Court dismisses Count II as to Defendant Jenkins.

### III. Conclusion

For the foregoing reasons, the Court grants the motion to dismiss all counts in the Second Amended Complaint with prejudice. The Court grants the motion to dismiss Counts I and III as to Local 2107 and the AFGE because Plaintiff failed to exhaust her administrative remedies against the Union Defendants, and as to Jenkins because individual liability cannot be found under either Title VII or the ADA.

The Court also grants the motion to dismiss Count II as to the Union Defendants because the CSRA precludes suits over the representational and internal affairs of federal employee unions, and as to Jenkins because Plaintiff failed to adequately allege a Section 1981 prima facie case of discrimination against him as an individual.

**ENTER ORDER:**

**MARTIN C. ASHMAN**
United States Magistrate Judge

**Dated:** September 2, 2004.

Copies have been mailed to:

ALAN L. BARRY, Esq.
ERIK F. DYHRKOPP, Esq.
SARAN K. PEDERSEN, Esq.
Bell, Boyd & Lloyd, L.L.C.
70 West Madison Street
Suite 3100
Chicago, IL 60602

RICHARD J. PUCHALSKI, Esq.
Law Offices of Richard J. PUCHALSKI
111 West Washington Street
Suite 751
Chicago, IL 60602

MR. KEVIN M. GRILE
Assistant General Counsel
American Federation of Government
 Employees, AFL-CIO
300 South Ashland Avenue
Suite 302
Chicago, IL 60607

Attorneys for Plaintiff

Attorneys for Defendants